Council, we may proceed. Thank you. Good afternoon. Brett Elward on behalf of Super Value, DBA, Advantage Logistics. Just a couple quick comments on the facts of this case. This is a case where the claimant is alleging she contracted or developed carpal tunnel syndrome, working as a product picker. Essentially her job is that she would walk through various aisles in the facility. There was a light scheme that would light up certain products. She would pick those and put those into a basket. In a worst case scenario, she picked approximately 450 per hour, seven and a half a minute or about one every eight seconds. In a best case scenario, it's about 300 per hour, five per minute or one every 12 seconds. So at least one every eight to 12 seconds. Exactly. The questions that we presented in the brief are essentially two parts. And what I'd like to do is focus not as much on the manifest weight argument today, but focus on the issues relating to our position that this decision should be remanded as a matter of law. It's our position here that the commission majority and the arbitrator refused to consider significant evidence that indicated that the claimant's bilateral carpal tunnel syndrome was caused by her prior employment. And this is considering this with respect to accident causation and her credibility. And when you review pages 9 and 11 of the commission's decision, what you see is it refuses to do so because there was no concurrent medical evidence indicating that there was a preexisting bilateral carpal tunnel condition. And it's our position that that's wrong as a matter of law and requires this court to remand the case for a full consideration of the evidence. And I think there's... But couldn't it be argued that what the arbitrator said and the commission adopted was this is one of the factors that I'm considering along with all the other evidence? No, I don't think so. I think what happened here is they essentially said we're not going to consider or we're not considering that. We don't care whether it was true or not. We're not considering those four witnesses' testimony because there's no medical evidence to suggest she had any previous diagnosis. And what we cited to in our brief are three legal authorities, Duran, Hessen, and Westinghouse, that indicate that a formal diagnosis is not required and that medical testimony is not necessarily required to establish or defeat causation or disability. So the law supports this in this case. I think we need to look at this in three aspects here. First of all, what was the evidence that would indicate that there were credibility issues or the preexisting carpal tunnel? We need to ask ourselves, how do we know if the commission really refused this? And I think the third question to ask again is, what does the law say? When we look at these four witnesses, Knott, Burnett, Elliott, and Durbin, what we've got is we've got testimony that the petitioner told them that she had bilateral carpal tunnel syndrome and that it was caused by her prior employment. Now, my opponent Is that an admission or something? I think it could be construed as one. Well, is it a fact or an opinion? Pardon me? Is she expressing a fact or an opinion when she says it was caused by my prior employment? I think honestly you could consider it as either one, but I think more strongly as a fact in this case because this isn't like us asking you to take a look. I know recently we asked you to look at an RN nurse and say, well, she does orthopedic work, she should have reasonably anticipated that this is what she had based on her symptoms and she works with carpal tunnel. Here we're not asking that. What we're saying is that the commission had an opportunity to look at testimony where the petitioner says, I had carpal tunnel syndrome and it was caused by my prior employment. Now, when you add that to her testimony or to comments to Sandy Knott and I think Ann Elliott that talked about why she was reporting this as a work comp claim now, because she didn't have medical coverage. So she's looking for an opportunity as to why this should be compensable, how to make this compensable, so she paints it up as a work comp claim. Now, that's not even considered here because the commission said we're not going to consider any of that testimony from those four witnesses because we don't have concurrent medical. And that's why we're saying this is wrong. Now, if we have to devolve into a discussion of Dr. Perona versus Dr. Pomerantz, now we slide into the manifest weight and I know exactly where you're going to come from and it's a hard battle for me to make. But as a matter of law, what I'm saying to you today is that this commission majority did not look at the whole ball of evidence. It said there's a portion of And it made its decision based upon that. I thought of an analogy coming up. It's just like in a foreign non-convenes case. We've got our six factors of public and private interests. When the trial court evaluates a foreign non-convenes issue and it only focuses on one and ignores the other factors, the appellate courts have said across the board that's an abuse of discretion, you've got to go back as a matter of law and re-decide this issue. It's the same type of thing here, but I think it's even stronger because of the cases that we cited show that we did not have to come in with medical evidence. It would have been great to have medical evidence, but to reject these four witnesses' testimony that goes to accident, credibility, and causation, simply because there's not concurrent medical to show a pre-existing condition, I think is... Your position is basically that it's not that they were rejected because they were found to be incredible, right? That's correct. What you're saying is that in some other areas of the law, what you're saying is that it was there for them not to consider it. Absolutely. And you're saying it's not harmless there. That's correct. And I think if the court reviews the testimony, the trial just called it that, but the arguments that were made at the circuit court, at page 15, Constanze even agrees that this isn't simply a situation where the commission majority said, we look at those four witnesses, we don't find them credible, we're going to follow the petitioner's testimony. She acknowledges in here they just ignored it because there's no medical to support it. There was no concurrent medical. And so that's why we say, it's not just me saying this, this is counsel saying this at the circuit court. This is a situation where the commission ignored a portion of the evidence. Now, okay, the response... Let's go back to my previous question because, I mean, you know, what the arbitrator said was, you know, it's really irrelevant if she made these So isn't the arbitrator just saying, you know, she's a layperson, she says, I had carpal tunnel, it was caused by my prior employment. That's not enough by itself. There's no sense even considering that because how would she know what caused it? Well, I think... Because there's no doctor who says... I think what happened here is that the arbitrator and the majority of the commission confused some of the comments in Durant about what constitutes a manifestation. And in this case, again, we're not saying that there was a body of facts ahead of this petitioner, and based on those, she should have inferred she had something. We have a definitive statement which could rise to the level of admission if it's considered as being, I had carpal tunnel syndrome. And it was related to my prior work. And I think that's the difference here. She said that, but it is true that there's no medical... No, absolutely. The only thing in the record, I mean, there's a three-year-old medical record where she says she has joint pain in her wrists. And the only other thing we have is an unexplained reference in the record to some type of brace that nobody could really attribute to where this came from. And the circuit court found it was rather interesting that there's a reference to her wearing a night brace, but yet none of the doctors that she saw had prescribed a night brace. So when you couple that with this other testimony of these four witnesses, it does make sense that perhaps she did have this beforehand. Now, why does... So on the record, though, I mean, she never got any treatment. Based on this record? Yeah, she never got any treatment. Nobody ever diagnosed her with it, as far as we know. So where does her statement come from where she says this was caused by my prior employment? She's just a layperson saying, oh, yeah, I worked in the food industry. Even if we... Which then caused the arbitrator to conclude it's really irrelevant for her to say that. She doesn't have to make a formal diagnosis. She doesn't have to call it carpal tunnel. She can just say my wrists hurt like crazy and it was caused by the work that I did. When we look at Durant, again, this is a context of determining a manifestation date. Durant says manifestation date is the date on which the injury and its causal link to the employment became plainly apparent to a reasonable employee. Well, here we have that reasonable employee telling people that I had this condition and it preexisted my work at your place. Mr. Elgort, is there an issue in this case regarding the aggravation of a preexisting condition? No, I don't think there is at this point. My opponent raised it and I anticipate she'll say, well, we can fall back on an aggravation. It is a compensable theory argument, isn't it? Aggravation is certainly a compensable theory. But we can't make that determination here because the full ball of evidence hasn't been considered. Bear with me a second. If we send this back and the commission considers or the arbitrator considers this in whole, there's evidence in here where the petitioner is saying that I'm making this claim because I need to have this paid for, so I have to call it a work comp claim and I'm sorry. If the commission finds that to be credible, if they consider this and find it to be credible, we win. And so we can't just say, well, we have some medical evidence in here that says the employment may have contributed to. We can't just look at that and say that because we have this evidence that was ignored, because that evidence goes to accident, causation, and credibility. It's a very significant body of evidence in this case and it was ignored. And the one person who did pay attention to that evidence was the dissenting commissioner. And what did he do? He said I would deny this claim based on the DVD, the record, the doctor's opinions, and the other employee's testimony. And so what we're asking you to do here is not really dabble in the manifest way. I would rather see this decision looked upon as the commission did not consider valid evidence as a matter of law. It needs to go back and have it considered. It can't reject this evidence and say it doesn't matter what it is because there's not concurrent medical when I don't have a burden to demonstrate that there's concurrent medical. And that's why we think this decision has to go back and be arbitrated. Now it will be interesting when it goes back because in essence you'll be vacating the arbitrator's decision and we'll really be starting from scratch on this based on the record. But I think it has to go back, it has to be considered, and you cannot just summarily dismiss those four people and say I'm not going to listen to whatever those four people say despite the fact that it impacts accident, causation, and credibility. Because those are key issues in this case. If she's not credible, all this talk about what she did becomes suspect. So that's why this is important to look at and say that it needs to go back and be reheard. Thank you. Thank you, counsel. Response? May it please the court, counsel. Jennifer Kieselwetter on behalf of the employee, Jerry Newhoffen. I disagree with the fact that this is a de novo review. I think the issue is manifest weight. And I believe the employer knows that they have a loss on manifest weight here. I think it's a creative argument on de novo review, but this is an issue of medical credibility and credibility of the witnesses. Well, he characterizes the commission's decision as one being where they simply said we're not going to consider this evidence at all. Is that what happened? No, and I think what Your Honor brought up earlier about is this fact or opinion, this is testimony from lay witnesses as to a medical conclusion. And I think that's what the arbitrator and the commissioner recognized. They're saying that the petitioner said, oh, this happened at a prior job. I developed these symptoms in the restaurant industry. And essentially what the arbitrator and the commissioner upheld is saying, well, even if she said that to these people, there's no evidence of that. And those are medical conclusions. But they didn't say they weren't going to consider it, did they? Didn't they say they considered all of the evidence, including the claimant's statement to the coworkers and the medical records? And that is correct. And I think the only thing the arbitrator and the commission said is we've considered this, but we don't have to break the tie as to whether she said that or not. We've considered the testimony of her that she didn't say it. We've considered the testimony of the four other witnesses. This is a medical ---- They never said we will not consider this evidence, did they? That is correct. That is correct. And they said, you know, basically we've considered all of this. This evidence surrounds what is a question of essentially medical. And so they look at the medical aspect of the case. And they point out, as counsel admitted, there is no medical evidence here that she had a preexisting problem. There's a 2004 note from Dr. Twanow that she was having joint pain in her wrists, joint pain in her elbows. There's a reference to a brace that she may have gone to Walgreens and bought. We don't know if that's on the elbow. We don't know if that's on the forearm. We don't know if that had anything to do with an alleged carpal tunnel. There was no evidence of an EMG prior to this date. There's no evidence of a prescription prior to this date. So to allege that this is not harmless error, even if they're worried in over-review, what would happen if we remanded the case? There's no evidence to support their position, first of all. But it is a manifest weight case. It's an issue of medical credibility, of credibility of the witnesses. And what the arbitrator and the commission essentially said here is, we don't have to decide who we believe. We're considering the testimony of both of them, and we're looking at the medical evidence. There's nothing to support that that's true, even if she did say it. The medical evidence here supports causal connection to the current injury. For being so outspoken about how she got carpal tunnel and when she got it and why she was found on workers' comp claim, she did a pretty good job of hiding any prior medical history of treatment for it, didn't she? That is correct. And I would point out, I mean, Petitioner at hearing offered the medical records of Dr. Twanow, and I think the employer did as well. That was her family doctor. It appears from the record, and there's nothing contrary, that it was her family doctor for years. We have one note in 2004 of joint pain and nothing until 2007. And Dr. Twanow, as the arbitrator and commission point out, says, recent onset of carpal tunnel pain. So, again, if this woman really thought that she had carpal tunnel while working in the restaurant industry, why is there no medical evidence to support it? Now, you say she was working in the restaurant industry. What was she doing in the restaurant industry? I believe she was working, I'd have to look at the record, but I believe that she was working essentially as a hostess and did some of the cook industry. They said that she, they assumed that she was a waitress, but I'm not even sure that that was accurate. I think for a while she was a waitress. Wasn't she self-employed, running her own restaurant? She may have, Your Honor. I'm not sure without going to the record. And I guess what I would say is I'm not sure it matters. Well, it would matter. I mean, many self-employed people don't file claims against themselves. Correct. Correct. Correct. That's true. I mean, that would explain why there might not be any medical evidence in the self-employed restaurant industry. Perhaps. But was she self-employed in 2004 when she went to Dr. Twanow and had joint pain? I mean, you know, I don't know that we can speculate on the record. And I think what the commission did here, I don't see any basis for de novo review. Merely because we have lay witnesses stating something which essentially is a medical conclusion that this woman said that her prior employment caused the carpal tunnel syndrome is something that they had the right to look at all of the other evidence when they weighed that. And this really is an issue of medical credibility, credibility of the witnesses. And the commission and the arbitrator have the right to consider all of that evidence. The finding is a fact. It's manifest weight. They have the right to consider that. They don't have to make a determination, I believe her that she didn't say that, or I believe them that she did say that. Because in this case, with the commission and the arbitrator saying it really doesn't matter, we're looking at the medical evidence, the medical conclusion here, the fact that on April 23, 2007, Dr. Twanow referred her for an EMG, there's nothing to the contrary. So while I appreciate the fact that they're trying to make this a de novo argument, I don't see it. Otherwise, I think in every case where you have testimony of someone saying, oh, she told me that it developed here, or he told me that it developed here, then if the commission says, well, there's no evidence of that, there's no medical evidence to support that conclusion, then can the employer come in here and say, they put an unfair burden on me to provide medical evidence. The employer's IME also did not testify that her carpal tunnel was attributable to some prior employment. That is correct. In fact, he said she didn't get it here, but he expressed no opinion about where she got it, although he agreed that she did have bilateral carpal tunnel. That is correct. He agreed with the condition. He agreed with the surgeries. And essentially, there is no medical opinion indicating she had a preexisting condition more than in any way, you know, contributed. I mean, he talked about her, you know, she's obese, she's a woman, different factors that lean toward carpal tunnel. Correct. Both Dr. Pomerantz and Dr. Flora admitted she had other risk factors. Neither one of them could testify that they actually caused it, just that they were risk factors. She may have been more prone to developing it, essentially, is what they said. And as we know, on a manifest basis, they adopted Dr. Perona. And that's where we are, and I think the employer understands that would be a hard burden to overcome. But, again, in no way is this Danova review. If this is Danova review, then any time we have a lay witness coming in here, we're going to have to have Danova review because the fact that the commission and the arbitrator acknowledge and consider that there's no medical evidence of a preexisting condition in the record, which essentially is what they did, doesn't put an unfair burden on the employer. And in this case Mr. Elwood will respond that that procedure necessarily shifts the burden. That observation is not innocuous. He's saying then that it's erroneous because it means we have to come forward with some evidence to rebut this. And the response I would say is that's not true. I mean, you put forth witnesses that said that this happened at a prior job, and the commission is essentially saying, okay, we're going to take a look at that and all the other evidence, and we don't see any medical evidence that this happened at a prior job that would affect our opinion on causation or other findings of fact. And that doesn't put the they have the right, if they thought that there were a preexisting condition, to try to bring forth other medical evidence. We know that there isn't any in the record. So it wouldn't have provided any different outcome. And essentially it's not putting a burden on them. It doesn't exist as far as the record is concerned. You put in evidence that it was caused by her employment. That is correct. So medical evidence. Then you rest. That is correct. So what did the commission do with those co-workers and their testimony? I think the commission considered them. We think. What the commission said is we're considering the four witnesses that the respondent had. We're considering petitioner. But really it's irrelevant whether she said it or not. Because based upon the medical evidence, we find an accident and we find causation. And essentially what they're saying is we don't have to come out and say she's a liar or they're a liar. We're considering what they said and taking that into context of all the other evidence that we have here, Dr. Pomerantz's report, Dr. Perrona's testimony, the lack of medical evidence that would support that she had a pre-existing condition, Dr. Squannell's records, taking all of that into consideration, we think she filed an act. We think she suffered a repetitive trauma accident and we find causation. So they do consider it. But what they're saying is we don't have to break the tie here on credibility. Because the source of what is being testified to, we have other evidence to draw the conclusions as to accident and causal connection. And essentially at this stage, how is that de novo review? How would that be any different than any other case where there would be a witness presented? I mean, essentially they did look at the credibility of the witnesses. They're testifying to something that has to do with a medical history here. And there is no evidence. And I think what the arbitrator and commission concluded is even if she said that, that her prior employment caused this, there's no evidence that we would have found any differently based upon what's in the record. So that's why they say and they go on to conclude it's irrelevant. And they actually go on to conclude even if we don't believe her and we believe the other four, there is evidence in this record to support our finding. And that's the referral for the EMG, the carpal tunnel surgery recommendations, and nothing else. There's nothing else in the medical record. Dr. Pomerantz isn't blaming this on a preexisting condition. So they do consider it. They don't just completely ignore it. They do consider it and they essentially consider both sides and say even if we don't believe her, even if we think she's a liar, we still come to the same conclusion. And so in that aspect, de novo review isn't appropriate. They considered all the evidence here. We're talking about medical credibility. We're talking about credibility of the witnesses. They considered all of the evidence. Even if we don't believe her? The employee. And I don't have the exact quote, but essentially there is a paragraph where the arbitrator in the commission uphelds and says even if she didn't say that, even if we don't believe her, we come to this conclusion. And it's in there. Even if we believe that she told those four coworkers this happened from prior employment, there's no medical evidence of that. There's no medical evidence of that. This is a medical conclusion, not a layperson conclusion, not an acute accident. So the question becomes did this particular job contribute? So as long as we've got a doctor saying this condition is attributable to the work injury, even though the claimant, when we say we don't believe her denying it, so we attribute to her that it did occur at her prior restaurant industry, that doctor is good enough, right? And that's a little bizarre. I think they considered all other evidence, though, which is there's no indication in the medical record she had any numbness or tingling. What she went in and told Dr. Twana was that it was a recent onset, that she had recent problems. Well, and she goes on, they go on to say they don't just stop at the medical evidence, they go on to say, and in addition, she had no problem carrying out her duties up until this point in time. Correct. She was working 12 and 13-hour shifts, et cetera, et cetera, et cetera. This was their analysis of these lay witnesses' testimony on each side, which was it really doesn't matter because all the other evidence points toward it occurring at this job. Isn't that what they say? That is correct, that is correct, or at least it's job contributing, being a contributory factor, which I think is the main part here, a contributory factor. I mean, essentially what they're saying is based upon the evidence we have, it's a contributory factor no matter which position we believe, whether she said it or she didn't say it. So they don't just fail to consider what the testimony was of Ms. Newhoff and of these four witnesses. They consider it, but they say even if we believe them and not Ms. Newhoff and essentially we're left with the same conclusion. So they consider it with all other evidence. So based upon that, I believe this is a manifest weight case. I do not think that there's a de novo review here, and the decision should be upheld. They're all findings of fact and medical credibility, and Dr. Perone's testimony was adopted. The testimony of the lay witnesses as to the job duties were adopted, as opposed to the actual video. So I would ask you to confirm the decision of the circuit court, which affirms the Illinois Workers' Compensation Commission. Thank you. Thank you, counsel. Counsel in reply? Mr. Howard, let me ask you a question here, pulling out Molly's arguments. How does an observation by the commission, a certain type of evidence is not in the record, how does that necessarily mean they're shifting the burden to you to produce this evidence? How do you draw that conclusion from a statement like that? Well, I think you draw that conclusion because we presented four witnesses that testified as to conversations with the petitioner, which it believes indicates that she had a condition that preexisted, was caused by other work, and that this whole lawsuit was just a fiction to get coverage. And in response to that, we're told we won't consider that because you don't have medical evidence. Did they actually say we won't consider that, or is that an extrapolation? Did they say, look, we've considered everything, we don't find that testimony of witnesses to be significant at all? I don't think they did. And if you look at page 7. Tell me where they say we won't consider the witnesses. Quote me where it says that. If you look at page 748, as they're discussing this other testimony, the commission majority or the arbitrator, which was adopted by the commission, says it is irrelevant to the case at bar whether these conversations occurred or did not occur. The arbitrator does not have to make a determination as to credibility on this issue because any determination is irrelevant. Even if we were to believe the petitioner told each of these witnesses that this development of carpal tunnel syndrome were due to prior job positions, there's no medical evidence to suggest that she had any previous diagnosis. What this is telling us is that if you don't have medical, we're not going to consider these witnesses. The case law that we cited says that medical testimony is not necessarily required to establish or disprove causation. And the way I read this is that they said we are not going to consider those witnesses' testimony because you don't have any medical records. And your Honor's pointed out a good point. We don't have discovery income. It's a hit or miss. We don't know. It's very difficult to get prior records. And I don't know if it happened here, but I know a lot of cases where you send a subpoena to a doctor and they start with the subpoena on the day of the treatment. And it's just a goose chase trying to catch this type of information. Now, I would like to say this. Whether this is a fact or opinion, I've got an eye condition. It's called uveitis. And I could tell you about that and what caused it. And you could say, well, is that your opinion or is that what you were told by a doctor? It's a fact and it's an opinion. And in this case, that's why I said what she says is a fact and an opinion. We're not asking that this court look at the petition and say, well, this nonmedical person, what's her medical opinion about whether somebody has or she has a condition? What we're saying is she admitted to somebody that I have carpal tunnel syndrome and it was caused by something else. And I think that's a significant statement. Did she say that again or did she say I have a problem with my hands? I don't think it would make any difference. Because if you look at the way Duran writes it, it just talks about the injury and it's causal and to the work. I think the fact that there is evidence in here from some of the witnesses that she said carpal tunnel syndrome, I think that makes my case even stronger. And, again, here's an issue that goes directly to credibility. She was asked if she made these statements and she denied it. Credibility is at the heart of this case. And if you're going to throw out any evidence that says that she's not credible because there's not medical records independently backing it up, I think that's wrong. So what would you be asking us to do today? What relief are you seeking from us? I would ask this court to have a rule that reiterates the Duran, Henson, and Westinghouse that says medical testimony is not necessarily required to prove or to dispute causation, accident, any of the issues that involve medical testimony, and to say that the commission here erred as a matter of law by disregarding this testimony of these four witnesses on the sole basis that there was not independent medical establishment. But to do that would have to be with your interpretation of the record, correct? I think it can be read plainly from their opinion, yes. And then, at that point, the court can back away and let the commission look at it again. But they have to be able to consider all of these witnesses' testimony on all these issues that we've talked about. Otherwise, they've only decided it on a fraction. If we're only going to look at a fraction of the case, look at their doctor and some holes in our doctor's testimony, that's not a full evaluation of the issues. And I don't think that you can say that's a full consideration of the case. Again, in closing, the dissent is the only one here who looked at this case in its entirety and he concluded that this is not compensable and they failed to burden proof. And we just want an opportunity to be able to have the commission consider all the evidence in this case. And that's why we're asking this court to make that statement. Thank you. Thank you, counsel. It's a matter to be taken under advisement. I've written this position. We'll issue.